**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YVONNE BARANOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 17-cv-02407 |
| v. | ) | |
| | ) | Hon. Harry D. Leinenweber |
| BLITT AND GAINES, P.C., and | ) | |
| MSW CAPITAL LLC, | ) | Magistrate Judge Mary M. Rowland |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT BLITT AND GAINES, P.C. MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Now comes Plaintiff, Yvonne Baranowski, by and through her attorneys, Community Lawyers Group, Ltd., and for her Response to Defendant Blitt and Gaines, P.C.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

### INTRODUCTION

Defendant Blitt and Gaines, P.C. ("Blitt") seeks to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant claims that it did not violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA") when it sent a Notice of Status ("Notice") directly to Plaintiff regarding a Circuit Court collection case ("Circuit Court case") it had filed against her in 2014. Defendant claims that Plaintiff allegedly had no counsel of record in the matter such that sending the Notice directly to Plaintiff was appropriate and did not violate the FDCPA.

As will be shown below, Plaintiff was in fact represented by an attorney at the time Defendant sent the Notice directly to Plaintiff. Further, Defendant was aware of the representation, such that sending the Notice constituted direct communication with a consumer, in violation of §1692c of the FDCPA. Defendant's Motion to Dismiss should therefore be denied.

**LEGAL STANDARD**

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case, see, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000); *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993). Documents which are referred to in a complaint and are central to a claim, as well as any matters of public record, may be considered on a motion to dismiss. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir. 2002); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). To survive a motion to dismiss, a complaint must contain sufficient facts to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir. 1995).

The FDCPA "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009). A determination of whether a statement is false, deceptive or misleading, like a determination as to whether a statement is confusing under the FDCPA, is a fact-bound determination of how an unsophisticated consumer would perceive the statement. *McMillan v. Collection Professionals Inc.,* 455 F.3d 754, 759 (7th Cir. 2006). In determining whether a

statement is confusing or misleading, a district court must "tread carefully" because "district judges are not good proxies for the `unsophisticated consumer' whose interest the statute protects." *Marquez v. Weinstein, Pinson, Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016) (citing *McMillan v. Collection Professionals Inc.,* 455 F.3d 754, 759 (7th Cir. 2006).

## ARGUMENT

### I. Defendant Knew Plaintiff Was Represented by An Attorney When It Sent the Communication Directly to Plaintiff

Defendant was fully aware that Plaintiff was represented by an attorney in the Circuit Court case at the time it sent the Notice to Plaintiff. Defendant relies heavily on the fact that Plaintiff's "counsel of record" had withdrawn and no substitute appearance was ever filed in the matter. (Dkt. #11, pp. 3-5). This argument holds no merit. What was formally a withdrawal and substitution of counsel in Plaintiff's Circuit Court case was in reality only a change in the name of the firm representing Plaintiff. Plaintiff's attorney never took steps to withdraw *himself* from the case. Defendant was aware of this. Further, and explained more fully below, no attorney appearance was *ever* formally filed on behalf of Plaintiff in the Circuit Court case until April 25, 2017. (*See* Exhibit A, Circuit Court case docket). Despite the lack of a formal filing, Defendant, from October 17, 2014 until now, has been aware of Plaintiff's continued representation in the Circuit Court matter, and yet it sent the March 17, 2017 Notice directly to Plaintiff. Section 1692c(a)(2) states as follows:

(a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer…

Defendant thus communicated directly with a consumer it knew was represented by an attorney in violation of the FDCPA.

**A.     The Substitution of Counsel Was Merely a Change in The Name of The Firm Representing Plaintiff in the Circuit Court Case**

On October 17, 2014, Andrew Finko ("Finko"), on behalf of Debtor's Legal Clinic, sent a representation letter to Defendant regarding Plaintiff's Circuit Court case. Thereafter, and to this day, Debtor's Legal Clinic never filed an appearance in the Circuit Court matter. On October 30, 2015, Finko filed a Motion to Withdraw and Substitute Counsel ("Motion to Substitute") in the Circuit Court matter, which was granted on November 12, 2015. In his Motion to Substitute, Finko sought to withdraw Debtor's Legal Clinic's appearance for Plaintiff, and permit a substitute appearance by Collection Defense Legal Aid Bureau ("CD LAB"). The Motion to Substitute specifically informed Defendant and the court that "[Plaintiff] would continue to be represented in this matter." (*See* Dkt #11-1, p. 2). Further, Finko filled out the attorney information portion of the November 12, 2015 Order with CD LAB's information, which had the same address as Debtor's Legal Clinic, thus further conveying to Defendant that there was simply a change in the name of the firm representing Plaintiff, nothing more. (*See* Dkt. Nos. 11-1, p. 2, 11-2). Defendant knew that Finko worked for Debtor's Legal Clinic, that the organization was winding down, and that CD LAB was taking over Plaintiff's representation in the matter, effective upon the November 12, 2015 Motion to Substitute being granted by the Circuit Court judge. Finko's individual role as attorney for Plaintiff never changed.

**i.     Where Facts Alleged Are Contrary to An Exhibit, The Exhibit Controls**

After the Motion to Substitute firms was granted, CD LAB did not file a substitute appearance in the Circuit Court case until April 25, 2017. As stated above, before April 25, 2017, the *only* appearance on record in the matter was Plaintiff's pro se appearance on August 4, 2014,

such that Defendant's claim that no supplemental or substitute appearance was filed and thus Defendant did not know that Plaintiff was represented in the Circuit Court matter is unpersuasive and disingenuous, as is Defendant's argument that Finko himself withdrew as Plaintiff's counsel of record. Defendant's own Notice, attached as Exhibit G to Plaintiff's Complaint, supports the fact that it was aware Plaintiff was still being represented by Finko, whether through Debtor's Legal Clinic, CD LAB, or some other firm. In fact, the Notice is addressed to a firm that was never associated with Plaintiff's representation in the Circuit Court case, but specifically lists Andrew Finko as the attorney to whom the correspondence is directed. (*See* Dkt. #1, Exhibit G). Thus, regardless of the name of the of the actual firm representing Plaintiff, Defendant was aware of Plaintiff's representation when it sent the Notice on March 17, 2017, because Defendant also sent the Notice directly to Plaintiff's attorney.

A court is not required to accept as true allegations that contradict matters in an exhibit attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). This Court should therefore disregard Defendant's claim that Finko withdrew as counsel and Defendant did not know whether or not Plaintiff was represented in the Circuit Court case, as such a claim is contradicted by Plaintiff's Exhibit G, explained above. The FDCPA is also a strict liability statute, and a debt collector "need not be deliberate, reckless, or even negligent to trigger liability." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009). Thus, regardless of Defendant's intent in sending the Notice directly to Plaintiff, Defendant knew Plaintiff was represented by an attorney in the Circuit Court case and this makes Defendant liable under the FDCPA.

      **ii.    Defendant Had Knowledge of Plaintiff's Representation and Could Readily Ascertain Her Attorney's Name and Address**

Knowing that Plaintiff was and still is represented in the Circuit Court case, Defendant, under § 1692c(a)(2), was not permitted to communicate with Plaintiff regarding the collection of her debt because Defendant had knowledge of *and* could readily ascertain Finko's name and address to contact him concerning Plaintiff's debt. Further, Defendant has been in the Circuit Court attending status calls for other cases in which Finko was also present. Therefore, even if this Court accepts that Defendant was unsure whether Plaintiff was still represented in the Circuit Court case, Defendant had many opportunities to discuss the issue with Finko before it sent the Notice directly to Plaintiff on March 17, 2017. For example, on March 13, 2017, Defendant and Finko were at the Circuit Court attending a status call in another matter in which Defendant and Finko represented the plaintiff and defendant, respectively. In fact, Defendant and Finko share no less than 20 matters in the Circuit Court. Defendant thus had an opportunity to inquire as to whether Finko was still representing Plaintiff in the Circuit Court case before it sent any communications directly to the consumer. (*See* Exhibit B, Motion Call Order).

A similar claim was brought in *Washington v. Portfolio Recovery Assocs., LLC*, 211 F. Supp. 3d 1041, 1047 (N.D. Ill. Sept. 29, 2016), where plaintiff claimed defendants violated § 1692c(a)(2) by sending a wage deduction notice directly to the consumer when defendants knew the consumer was represented by an attorney. Plaintiff was sued in state court by defendants and hired an attorney who sent a representation letter to defendants on December 27, 2013. *Id.* at 1046. Plaintiff's attorney entered an appearance in the state court matter, but the appearance was never served on defendants. *Id.* On March 20, 2014, Defendants sent a wage deduction notice directly to plaintiff. *Id.* Defendants argued the Illinois garnishment statute required a wage deduction notice to be sent to the consumer at her last known address and that interpreting § 1692c(a)(2) to require notice to be sent to the consumer's attorney directly contradicts Illinois law. *Id.* at 1054.

Defendants also claimed that they did not know plaintiff was represented by counsel because plaintiff's attorney never served its appearance on defendants. *Id.*

The court found these arguments unpersuasive and granted plaintiff summary judgment on this claim. *Id.* The court found defendants had actual knowledge of plaintiff's representation based on the December 27, 2013 letter sent to defendants, which was sufficient to put them on notice that plaintiff was represented in the state court action. *Id.* The fact that defendants were never served with plaintiff's appearance in the matter was of no concern to the court. It went on to say that "[i]t is easy to imagine a situation in which an attorney represents a debtor but does not have an official appearance on file." *Id.* The court explained that it came across many situations where violations of § 1692c(a)(2) have been found based on an attorney's informal communication to a debt collector, further dispelling defendants' claim that it did not have knowledge of plaintiff's representation because it did not receive a copy of plaintiff's attorney's appearance in the state action. *Id.* at 1055.

The *Washington* court also rejected defendants' argument that interpreting § 1692c(a)(2) to require notice to be sent to the consumer's attorney would "render the FDCPA unconstitutional" because Illinois garnishment law requires notice to be sent to a consumer at her last known address. *Id.* (internal quotes omitted). Federal law preempts contrary state law and § 1692c(a)(2) actually provides greater protection to consumers than the Illinois garnishment law. *Id.* Thus, "to the extent that there is any conflict between the requirements of § 1692c(a)(2) and the Illinois garnishment statute, federal law would control." *Id.* at 1056; *see also* 15 U.S.C. § 1692n.

The instant case presents a very similar situation. Plaintiff's attorney sent a letter to Defendant, clearly informing it of her status as a represented consumer. The letter also provided Defendant with the name of the attorney, and his contact information. The Motion to Substitute

also included Finko's name and updated contact information. Finko did not need to formally file an appearance in the case for Defendant to "know" that Plaintiff was represented by an attorney, as clarified by *Washington*, *supra*. Further, in the face of any alleged contradictions between Illinois law and the FDCPA, it is also clear that the FDCPA will control. Federal law will preempt contradictory state law, and here, § 1692c(a)(2) provides greater protection to consumers than Illinois rule 13(c)(5). Defendant was put on notice that Plaintiff was represented by an attorney as early as October 17, 2014 and, despite Defendant's assertion otherwise, her status as a consumer represented by an attorney has not changed since that day.

The case of *Holcomb v. Freedman Anselmo Lindberg, LLC*, ---F. Supp. 3d, 3017 WL 1105445 (N.D. Ill. Mar. 24, 2017) is also instructive. There, defendant sent a motion and notice directly to the consumer *and* her attorney regarding a state court lawsuit, despite receiving an attorney representation letter on behalf of plaintiff some three months earlier. *Id.* at *1-2. Defendant claimed it did not know plaintiff was represented by an attorney when it sent the documents to her. *Id.* at *2. Defendant's argument relied largely on the fact that plaintiff's attorney did not file an appearance until late in the state action and that, believing plaintiff was proceeding pro se, it was merely complying with Illinois notice rules in sending the notice to plaintiff. *Id.* at *2. The court held that none of defendant's claims had merit and that no reasonable jury could find that defendant did not know plaintiff was represented by an attorney in the state case. *Id.* at *2-3.

The court found that, based on the representation letter and plaintiff's attorney's appearance alongside defendant at several state court hearings, including two court orders which expressly noted both counsels' presence on the record, defendant cannot say that it did not know plaintiff was represented by an attorney. *Id.* at *3. Defendant could have and should have objected to an attorney appearing without an appearance on file, but it did not, and defendant thus waived

8

any chance to challenge counsel's appearance in the case. Illinois trial courts have discretion to permit the unlimited, general appearance of an attorney, thereby qualifying that attorney as an "attorney of record" even when no appearance has been filed. *Id.* at *4; Ill. S.Ct. R. 13. Moreover, the court explained that when acting together, Illinois Supreme Court Rule and Circuit Court of Cook County Rule 2.1(c)(i) "mandate that any court filings be served upon a party's attorney if the party is represented by an 'attorney of record.'" *Id.* at *4.

In a footnote, the court further explained that while such a holding may place a burden on debt collectors to determine whether a consumer's attorney participating in a state collection action without an appearance on file is an "attorney of record", they could easily address this issue by seeking clarification from the attorney or by seeking an order from the court allowing it to send filings directly to the debtor until a formal appearance is filed. *Id.* at n.6. Finally, of particular import here, is the courts statement that "if [defendant] actually believed that [plaintiff] was proceeding *pro se*, it would not have felt the need to send a copy of the motion and notice to her attorney." *Id.* at *4.

Here, the exhibits attached to Plaintiff's Complaint show that, while there was no appearance on file, Defendant did not object and several court orders indicate that the judges in the Circuit Court case, in their discretion, permitted Plaintiff's attorney's general, unlimited appearance in the matter. Additionally, as noted above, Defendant did not seek a court order permitting it to contact Plaintiff directly until a month *after* it violated the FDCPA by directly communicating with a consumer represented by an attorney. Defendant's argument that it did not know Plaintiff was represented holds no weight and its Motion to Dismiss should be denied.

**B.     Illinois Supreme Court Rule 13(c)(5) Did Not Require Defendant to Send the Notice Directly to Plaintiff**

Defendant also argues that pursuant to Illinois Supreme Court Rule 13(c)(5), a supplemental appearance was required to be filed, and because it was not, and because Finko allegedly did not appear in court until after the present lawsuit was filed, there was no counsel of record such that Defendant's act of sending the Notice of March 13, 2017 was proper. (Dkt. #11, p. 4). Rule 13(c)(5) states that "*[u]nless another attorney is*, at the time of such withdrawal, *substituted for the one withdrawing*, the party shall file in the case within 21 days after entry of the order of withdrawal a supplementary appearance stating an address at which the service of notices or other documents may be had upon him or her." Ill. S.Ct. R. 13(c)(5) (emphasis added). This has been understood by Illinois courts to mean that if a party's counsel withdraws, that party has 21 days to find new counsel or file his or her own supplemental appearance. *See First Nat. Leasing Corp. v. E.T.P. of Chicago, Inc.*, 511 N.E.2d 889, 891 (Ill. App Ct. 1987); *see also Berman v. Dempsey*, 629 N.E.2d 720, 722 (Ill. App. Ct. 1994) ("the failure of the attorney appearing before the court to file an appearance was inconsequential because the case proceeded without any apparent objection, inconvenience or confusion by the court or the parties as to who was properly representing who and without any claim or evidence of prejudice to petitioner.").

Here, Plaintiff did not have to find new counsel or file her own supplemental appearance. At the time of withdrawal, another law firm was clearly substituted for the one withdrawing in Plaintiff's Circuit Court case. The substitution occurred at the time at the time the Motion to Withdraw was granted, wherein the court expressly permitted Debtor's Legal Clinic to withdraw, CD LAB was permitted to take over representation, and the new firm information was used to fill out the Order from that day. (*See* Dkt. #11-2). Defendant was present at the Motion to Substitute hearing and understood what was happening. The fact that CD LAB never formally filed an appearance in the matter is therefore of little consequence here, as the initial firm representing

Plaintiff similarly never formally filed an appearance, and the same attorney was representing Plaintiff regardless of firm name. Further, as the case proceeded after November 12, 2015, there was no apparent objection, inconvenience, or confusion alleged by the court or the parties as to who represented Plaintiff in the Circuit Court matter, despite the lack of an appearance on record.

A debt collector must comply with the FDCPA while also complying with state law. *Goodrow v. Friedman & MacFayden, P.A.*, 788 F. Supp. 2d 464, 471 (E.D. Va. May 25, 2017). The FDCPA does not "annul, alter, or affect, or exempt" any person from complying with state laws on debt collection practices, except to the extent that those laws are inconsistent with any provision of § 1692n, and then only to the extent of the inconsistency. *Id.*; *see also* 15 U.S.C. § 1692n. In *Goodman*, plaintiff had retained counsel and sometime afterward, defendant sent a notice of trustees' sale directly to plaintiff, despite having knowledge of his representation. *Id.* at 466. Defendants claimed that they sent the notice to plaintiff in order to comply with Virginia law on foreclosures, arguing that state law made it impossible for the notice to be a communication in connection with the collection of a debt. *Id.* at 471. The court rejected this argument. It cited to a Second Circuit decision which held that, while a landlord could comply with both the FDCPA and state law requirements, § 1692n requires state law to yield if the provisions conflicted. *Id.* The court held that defendant was not exempt from the requirements of federal law simply because it attempted to comply with state law. *Id.*

Similarly in *Chung v. Shapiro & Denardo, LLC*, 2015 WL 3746332 (D.N.J. June 15, 2015) plaintiff had retained counsel, and despite defendant's knowledge of the same, it continued to communicate directly with plaintiff by sending correspondence to his home. *Id.* at *1. Defendant argued that New Jersey foreclosure law required direct service of plaintiffs so defendant was not liable under the FDCPA when it communicated directly with plaintiff in compliance with state

law. *Id.* at *2. Defendant further argued that the FDCPA permits state law to allow debt collectors to contact debtors represented by counsel. *Id.* at *3. The court rejected the argument, relying on § 1692n, and explained that if state law interferes with or is inconsistent with federal law, it is overruled to the extent of the inconsistency. *Id.* at *2-3. The court held that "[r]equiring direct communication and prohibiting direct communication with individuals represented by counsel are obviously inconsistent. The FDCPA prohibits debt collectors from contacting debtors represented by counsel. State law to the contrary cannot absolve [d]efendant from liability here." *Id.* at *3.

The instant case is analogous to the two cited above. Defendant argues it was complying with state law by sending the Notice directly to Plaintiff because there was no counsel of record in the Circuit Court case. In fact, Defendant argues that it was required to do so. As explained above, however, Defendant was aware Plaintiff was represented in the Circuit Court case, even in the absence of a counsel of record. Therefore, under the FDCPA, Defendant was required to first contact Plaintiff's attorney, and, if there was no reasonably timely response, Defendant would have been permitted to contact Plaintiff directly. Defendant did not attempt to contact Plaintiff's attorney before it sent the March 17, 2017 Notice. Yet, there was nothing to indicate to Defendant, after the November 12, 2015 substitution of counsel, that Plaintiff was *not* represented by CB LAB. Finko's lack of appearance in subsequent court dates cannot be construed to mean that Plaintiff was unrepresented in the Circuit Court case. As Defendant knows, Rule 13(c)(2) states that an attorney may not withdraw his or her appearance without leave of court and notice to all parties. Ill. S.Ct. R. 13(c)(2). At no time after it was granted leave to *appear* for Plaintiff did CD LAB inform the court or the parties of its intent to withdraw as counsel. Nor did Finko inform the court or the parties of the same.

12

Defendant's argument that § 1692c would "prevent a debt collector from serving a consumer with process or notice when the debt collector knew the debtor was represented by an attorney and the attorney reasonably responded to communication but refused to allow direct communication with the consumer or appear in court; thus effectively depriving debt collectors of access to the courts" is likewise unpersuasive, for reasons explained in *Chung* and *Goodman*, *supra*. (Dkt. #11, p. 4). Defendant pulls this language from a case it cited in a footnote, *Spearman v. Tom Wood Pontiac-GMC, Inc.*, 2002 WL 31854892 (S.D. Ind. Nov. 4, 2002). In *Spearman*, the court expressly noted that the application or constitutional implications of § 1692c(a)(2) was not before it. *Id.* at *3. Further, in its limited discussion on that section of the FDCPA, it was analyzing whether serving a debtor with process when the creditor knew the debtor was represented would be a violation of § 1692c(a)(2). *Id.*

The instant case presents a very different situation and is not at all concerned with whether Defendant can initiate a lawsuit against Plaintiff and serve her with process and if that would violate the FDCPA. Defendant's argument that there are constitutional concerns present here should therefore be disregarded. Defendant could easily have complied with both the FDCPA and Illinois state laws. The Notice here was a mere notice of the status of Plaintiff's Circuit Court case. It was a notice that could have and *should have* been sent only to Plaintiff's attorney, as such an act would have simultaneously satisfied the FDCPA and any state law notice requirements.

Furthermore, the Order attached to the Notice actually provides Defendant with the solution as to what it could do in the event a consumer's attorney reasonably responds to the debt collector but refuses to allow direct communication with the consumer or fails to appear in court. The Order sets a status date of April 20, 2017, and clearly states that "[Blitt] has leave to file motion for default judgment" in the matter. (*See* Dkt. #1, Exhibit G, p. 2). Thus, Defendant's

argument that § 1692c(a)(2) would deprive debt collectors of access to the courts, particularly in a situation like the instant case, must fail.

### C. Defendant Did Not Have Any Court's Permission to Communicate Directly with Plaintiff

In addition to being fully aware that Plaintiff was at all times represented by an attorney in the Circuit Court case, Defendant did not have permission from any court to communicate directly with Plaintiff on March 17, 2017. Section 1692c(a) states that:

(a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

Here, Defendant did not have the express permission of *any* court to communicate directly with the consumer when it sent the Notice directly to Plaintiff on March 17, 2017. It was not until the next routine status hearing on April 20, 2017, over a month after the Notice was mailed, that Defendant specifically sought to have the judge in Plaintiff's Circuit Court case include in the Order a statement that "[Blitt's] prior notice to [Plaintiff] was appropriate." There was no reason for the court to include this statement in its Order that day, and its presence on a court order becomes even more suspicious considering the fact that it was included on an order *after* this lawsuit was filed. Defendant's purposeful act of requesting this sort of "approval" from the Circuit Court appears to be nothing more than a thinly veiled attempt to retroactively remedy the FDCPA violation knowingly committed by Defendant when it sent the Notice directly to Plaintiff on March 17, 2017. Defendant's Motion to Dismiss should therefore be denied in its entirety.

### II. Defendant Should Not Be Awarded Fees and Costs for Defending This Claim

Defendant claims that Plaintiff omitted the "vital fact" that Finko withdrew as her counsel in the Circuit Court case and that the omission of this allegedly dispositive fact is an example of a

bad faith and harassing plaintiff under § 1692k(a)(3). (Dkt. #11, pp. 5-6). As an initial matter, it should be very clear at this point that Finko individually never withdrew himself from the Circuit Court case. As attorney for Debtor's Legal Clinic, he moved to withdraw *the firm* as representative of Plaintiff, because it was discontinuing operations, in order to substitute in the new firm, for which he also worked. Finko individually never ceased to represent Plaintiff in the Circuit Court case, and in fact has represented Plaintiff in the matter from October 17, 2014 to this day. Plaintiff is at a loss to identify exactly what about this case could constitute bad faith or harassment.

Bad faith under § 1692k(a)(3) can be demonstrated where "the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass the defendants rather than to obtain a favorable judgment." *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir. 1985). An award of fees under § 1692k(a)(3) is discretionary, and in the absence of evidence that a plaintiff knew his or her claim was meritless and yet pursued the claim for the purpose of harassing a defendant, a court may not permit a prevailing defendant to recover attorneys' fees. *Mayhall v. Berman & Rabin, P.A.*, 13 F. Supp. 3d 978, 982 (E.D. Mo. Apr. 7, 2014). There is no evidence of bad faith or harassment here. As shown above, Plaintiff's claim has merit and she has alleged sufficient facts to state a claim under § 1692c of the FDCPA and survive a motion to dismiss. Both Defendant's Motion to Dismiss and its request for attorneys' fees incurred in defending the instant action should therefore be denied.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that Defendant's Motion to Dismiss should be denied in its entirety. In the alternative Plaintiff seeks leave to amend its complaint, or for any other relief deemed necessary by this Court.

Respectfully submitted,

By: */s/Celetha C. Chatman*

Celetha Chatman
Michael Wood
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 514
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com

## CERTIFICATE OF SERVICE

I, Celetha Chatman, an attorney, hereby certify that on June 29, 2017, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: June 29, 2017**                                    Respectfully submitted,

                                                                    By:    /s/ *Celetha Chatman*

17